[Civ. No. 17001. First Dist., Div. One. July 3, 1957.]

In re ASCHOT MELKONIAN et al., Abandoned Children. EDITH LEE, as Senior Probation Officer, etc., Respondent, v. LEWON MELKONIAN, Appellant.

Charles R. Garry, Benjamin Dreyfus and Garry, Dreyfus, McTernan & Keller for Appellant.

Dion R. Holm, City Attorney (San Francisco), and Robert M. Desky and Paul J. DeNoia, Deputy City Attorneys, for Respondent.

WOOD (Fred B.), J.—In January, 1953, Lewon Melkonian shot and killed his wife and one Lewon Usunian. In July of that year he was convicted of manslaughter on two counts and was sentenced to serve consecutive terms in the state prison.

Meanwhile, the three children of Melkonian and his deceased wife (the oldest of the children was born in February, 1945) were declared wards of the juvenile court in a proceeding brought pursuant to section 700, subdivision (b), of the Welfare and Institutions Code.

In May, 1954, pursuant to the provisions of section 701, subdivision (d), of the code a probation officer petitioned for an order declaring the children free from the custody of their father. The trial court found the foregoing facts. It also found that the father is incarcerated in the state prison and has been deprived of his civil rights due to the convictions mentioned, felonies of such a nature as to prove his unfitness to have the future custody and control of the children; that the terms of sentence currently being served by him are such that the children will be deprived of a normal home for a period of years; that there is no other relative of the children residing within this state whose relationship and address are known; that the children are persons within the meaning of section 22 of article IV of the state Constitution, section 224 of the Civil Code and section 701, subdivision (d), of the Welfare and Institutions Code and should be declared free from the custody and control of their parent Lewon Melkonian. Melkonian has appealed from the judgment and from an order denying his motion for a new trial.

His first contention is that section 701, subdivision

(d), is too vague and uncertain to furnish a standard for guidance of the courts in administering it. He says that the reference to "felony" is too broad in its sweep. It includes a number of felonies, he claims, the commission of which would have no bearing upon the perpetrator's fitness or unfitness as a parent. He overlooks the fact that "conviction of a felony" is only one of the elements of the formula which this statute gives the juvenile court for its use in investigating and determining the fitness of a parent. In addition, the parent must be a person who is "deprived of . . . [his] civil rights" due to such a conviction. He must also be a "parent . . . who . . . [is] imprisoned."

These are but minimal factors. In each case in which these facts obtain, the court has yet to decide that the felony involved "is of such nature as to prove the unfitness of such parent . . . to have the future custody and control of the child, or that the term of sentence of such parent . . . is of such length that the child will be deprived of a normal home for a period of years." (§ 701, subd. (d).)

In the conduct of such investigation section 784 declares that the court shall proceed to hear and dispose of the case "after full and careful consideration of all the evidence presented and with due regard to the rights and claims of the parents of such person [the three children in this case], and to any and all ties of blood or affection, but with the dominant purpose of serving the best interests of such person."

This we deem a sufficiently definite and certain standard to serve as a workable formula for the use of the courts in carrying out the mandate of the statute. It is one of a series of six formulae severally expressed in subdivisions (a) to (f), inclusive, of section 701 of the code.

The inquiry under this statute is similar to that under the guardianship statute, the fitness or unfitness of the parent and best interests of the child. In such a situation it is not possible to prescribe and apply a rigidly specific formula. As we said in *Guardianship of Smith,* 147 Cal.App.2d 686, 694 [306 P.2d 86] : "Because human relationships and human conduct are so variable and complex it probably is impossible, and certainly undesirable, to state or to try to state a fixed formula applicable to all cases." (See also *People* v. *Deibert,* 117 Cal.App.2d 410 [256 P.2d 355], discussing similar questions in relation to section 702 of the Welfare and Institutions Code.)

The mandate of section 784 was observed in this case. The

record includes evidence of the family history and background, Melkonian's mental and emotional history (which indicated a considerable degree of instability), the surrounding circumstances and the details and the nature of the killings (which the court in the instant proceeding characterized as voluntary manslaughter), the attitude of Melkonian toward his children and their attitude toward him, and other relevant and significant circumstances. This evidence amply supports the trial court's findings and conclusions.

■ Appellant's second contention is that the current proceeding was unnecessary because the children had already been made wards of the juvenile court pursuant to the provisions of subdivision (b) of section 700 of the code. In the earlier proceeding the court found that the children came within the provisions of section 700, subdivision (b), "in that the mother of said persons is deceased; that the father is confined to City Prison charged with the murder of said mother and one other person; that said father is a highly disturbed, unstable person who is unable to provide a suitable plan for care of said persons; that said persons have no parent or guardian capable of or actually exercising proper parental control and is in need of such control."

The two proceedings are not mutually exclusive. The section 700, subdivision (b), proceeding doubtless served very well pending the outcome of the criminal prosecution. Upon the sentencing of Melkonian to two consecutive prison terms of 10 years each, a new problem arose: How to provide a suitable home for these children of tender years in view of his incarceration for a possibly long period of time during which he would be deprived of his civil rights? A permanent home might not be found unless the foster parents could adopt these children. Freeing them from the control of their father will make adoption possible without his consent. (Civ. Code, § 224.) And there is substantial evidence that he is emotionally unstable and otherwise not fitted to discharge the responsibilities of parenthood. The evidence supports the conclusion that the action taken by the trial court served the best interests of these children, the dominant purpose of this proceeding.

The judgment is affirmed. The appeal from the denial of a new trial, a nonappealable order, is dismissed.

Peters, P. J., and Bray, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 27, 1957.