[Civ. No. 20395. First Dist., Div. One. Aug. 20, 1962.]

In re RENE MICHELE ZIMMERMAN, a Minor; JESSE ZIMMERMAN et al., Petitioners and Appellants, v. ELIZABETH ZIMMERMAN, Defendant and Respondent.

Carr, McClellan, Ingersoll & Thompson, Luther M. Carr and David C. Carr for Petitioners and Appellants.

Timothy A. O'Connor and Arthur W. Walenta, Jr., for Defendant and Respondent.

SULLIVAN, J.—This is an appeal by Jesse Zimmerman and Evangeline Zimmerman, his wife, paternal grandparents of Rene Michele Zimmerman, the above-mentioned minor, from orders of the Juvenile Court of Santa Clara County denying their petition to have said minor child declared free from the custody and control of her mother, Elizabeth Zimmerman, respondent herein.

Appellants take this appeal "from that part of the judgment . . . entered in the Minute Record . . . on July 28, 1961, in Volume 2 at page 102 thereof, and from that part of the order of said Court, Department 9, signed by his honor, Marshall S. Hall, Judge of the above-entitled court on September 5, 1961, which part of said judgment and said order denied the Petition of Jesse Zimmerman and Evangeline Zimmerman to have the above-named minor declared to be free from the custody and control of her parent." ■■■ Since, as we shall hereafter point out, said minor child had previously thereto been adjudged a ward of the juvenile court by order dated December 7, 1959, the minute order of July 28, 1961, constitutes a subsequent order which "may be appealed from as from an order after judgment" (Welf. & Inst. Code, former § 580). In view of the fact that such minute order of July 28, 1961, did not direct or otherwise require the preparation, signing and filing of a formal written order (cf. *Herrscher* v. *Herrscher* (1953) 41 Cal.2d 300, 304-306 [259 P.2d 901]; *Gwinn* v. *Ryan* (1949) 33 Cal.2d 436, 437-438 [202 P.2d 51]), the remaining written order of September 5, 1961, is not appealable and appellants' attempted appeal therefrom must be dismissed.[1]

Rene was born in San Jose, California, on May 20, 1952. Her father died in 1954. Shortly after his death, respondent returned to her former home in Connecticut taking Rene with her. They resided there for about two years and then returned to San Jose to live.

On November 9, 1959, Jesse Zimmerman, one of the appellants herein, petitioned the Juvenile Court of Santa Clara County to have Rene declared a ward of said court. His petition filed pursuant to former sections 720 et seq. of the

---

[1]The minute order of July 28, 1961, also denied without prejudice the motion of the respondent mother for permission to visit her minor child. The record also contains a separate written order of September 5, 1961, denying without prejudice the mother's motion for permission to visit and also to have telephone conversation with the above minor. Respondent mother has taken no appeal from either order.

Welfare and Institutions Code alleged that Rene was a person coming within former subdivision (d) of section 700 of such code in that her mother, respondent herein, who had the custody and control of Rene, was a depraved person and said mother's home an unfit place for Rene to live in.[2] Among other things, it was alleged that the respondent herein entertained many men at all hours of the day and night, as well as other persons of questionable repute; that drinking and sexual activities which were contrary to accepted social customs and good morals, were carried on, many of them in the presence of said child; that respondent lodged the child in unfit places; that respondent related over the telephone and in the presence of the child the sexual activities engaged in by respondent; and that respondent habitually used vulgar and profane language in addressing the child and others in the child's presence. In its order dated December 7, 1959, the court, finding that the allegations of fact contained in the petition were true, determined that the above-mentioned minor child came within the terms of subdivision (d) of section 700, adjudged her to be a ward of the juvenile court, committed her to the care, custody and control of the probation officer until she attained the age of 18 years or until further order of court, and ordered that she remain in the care of appellants until further order. Respondent did not appeal from the foregoing order.

On June 15, 1961, appellants filed in the above proceeding a petition, now before us for consideration, to declare Rene free from the custody and control of respondent under section 701[3] upon the grounds that respondent had been deprived of the custody of Rene because of respondent's moral depravity

---

[2]The Juvenile Court Law of which the above sections as well as others here pertinent are a part, was extensively revised in 1961. (Stats. 1961, ch. 1616, § 1, p. 3459 in effect September 15, 1961.) No useful purpose would be served by reference to such new enactments which are not applicable to the matter before us. Unless otherwise indicated, all code references hereafter are to the Welfare and Institutions Code, as it read and as its sections were numbered *prior to the 1961 revisions* of the law.

Section 700 in relevant part provided as follows: "The jurisdiction of the juvenile court extends to any person under the age of 21 years who comes within any of the following descriptions:

" . . . . . . . . . . .

"(d) Whose home is an unfit place for him, by reason of neglect, cruelty, or depravity of either of his parents, . . ."

[3]Section 701 in relevant part provided: "The jurisdiction of the juvenile court extends also to any person who should be declared free from the custody and control of either or both of his parents. The words 'person who should be declared free from the custody and control of

and that Rene had been a ward of the juvenile court for one year continuously immediately prior to the filing of said petition. Such proceedings were pursuant to former sections 775 through 786.[4]

At the subsequent hearing on the merits, appellants called three witnesses, one of whom was the respondent mother called under the provisions of section 2055 of the Code of Civil Procedure. At the conclusion of appellants' case, respondent again testified as a witness in her own behalf.

Respondent acknowledged that she had testified at the earlier hearing in November 1959 to certain acts and conduct occurring during a two-year period while Rene was living with her in San Jose. Such testimony related to her having engaged in sexual relations with various men at her home in San Jose, some of the incidents having occurred while Rene was in a nearby bedroom; to respondent's association with a woman who had a record for criminal offenses and narcotic addiction who visited respondent's home when Rene was there and with whom Rene had been left on occasions; and to various telephone conversations in which respondent described in detail to the above-mentioned woman and to other persons her sexual experiences, although respondent stated that Rene was never present on such occasions. In addition, she admitted that tape recordings had been made of such conversations, that they constituted a true representation of the conversations and had been received in evidence at the former hearing in November 1959.

These tape recordings were again offered by appellants at the 1961 hearing and received in evidence.

Respondent further testified that after Rene had been declared a ward of the court, respondent attempted to rehabilitate herself. She remained in San Jose for about two months

---

either or both of his parents' shall include any person under the age of 21 years who comes within any of the following descriptions:

"(c) Whose parent or parents are habitually intemperate, or morally depraved, if such person has been a ward of the juvenile court, and the parent or parents deprived of his custody because of such intemperance, or moral depravity, for the period of one year continuously immediately prior to the filing of the petition praying that he be declared free from the custody and control of such habitually intemperate or morally depraved parent or parents."

[4]Section 775 provided for a petition alleging *inter alia* that "[t]here is or resides within the county a person who should be declared free from the custody and control of his parents, as defined in section 701 . . ." and that "[t]he superior court . . . sitting as a juvenile court, shall have jurisdiction to hear and determine such proceeding."

before returning to Connecticut to live with her parents. Although she stated that during this period she "was seeking help" and made efforts to improve herself, she also testified that she had sexual intercourse, and saw "maybe once" during the period the above-mentioned woman with whom she had associated.

Upon her return to Connecticut, she obtained employment but was forced to leave her job because of a nervous breakdown. Following her doctor's advice that she was definitely in need of help, she became a patient at the Connecticut State Hospital for approximately two months and thereafter received some medical attention there from time to time. She resumed her job but found the work difficult as she had "completely lost my sense of concentration. . . ." She admitted that while in Connecticut she "had intercourse." It also appears from her testimony that she had had "psychiatric treatment a few years back . . . due to my husband's death and just a combination of everything."

After her discharge from the Connecticut State Hospital, respondent continued receiving medical attention as an out-patient and was also under the attention of a social worker there for about a year. Her last visit to the hospital had been just three days before the 1961 hearing.

She further stated that she wrote regularly to Rene while she was in Connecticut, at one time every day, and received "about seven letters" in reply. She also sent gifts to her daughter which were acknowledged. She requested the juvenile court officers, by letters written by herself and also by her attorney, for permission to see Rene but received no answers. She explained her return to Connecticut on the grounds that ". . . I was very ill and I couldn't see Rene" and also because she discovered that after the previous hearing and until she left for Connecticut, she was being followed by a person or persons not identified in the record.

Respondent was 34 years old at the time of the second hearing. The record shows that although she opposed the instant petition, she made no request for the custody of Rene or any application that the order placing Rene in the care of appellants be terminated or modified in any way. She did seek permission to see Rene and to talk with her on the telephone. She explained her position by stating that she was not ready to take Rene but "I have been working and trying to rehabilitate my life. . . . I was a very sick person, and it's taken me some time to rehabilitate myself." She stated that she was

sick all during the year 1960 and that ". . . I would say the last four months I have started to come out of it; . . ." She felt that psychiatric care had helped. She wanted to stay in California, find a job and "eventually have my daughter with me." She had been unable to save any money on a salary of $45 a week.

The remaining two witnesses testified to events occurring before the 1959 order declaring Rene a ward of the court. Margaret Feinleib, a deputy district attorney, had interviewed Rene in June 1960 at the request of Mrs. Zimmerman, one of the appellants, and upon the latter's complaint that the child had been subjected to molesting in the past. At the interview, Rene described to the witness several incidents which occurred while she was living with her mother. No legal action was taken as a result of the interview.

The testimony of David Pollock, a San Jose police officer, employed by Mr. Zimmerman as an investigator, also related to events occurring before the 1959 hearing. Pollock had kept respondent's San Jose residence under surveillance and had also made tape recordings of her telephone conversations. He testified to the general content of some of these conversations as dealing with acts of intercourse, abortions and marijuana. The witness stated that during some of the conversations Rene could be heard in the background, the implication being that such conversations were at the time in her presence. In one of the conversations, the respondent joked about an incident involving certain questionable conduct of a male friend of respondent's towards Rene, this incident being later reported by the child to Mrs. Feinleib.

The court below, upon the objection of respondent, refused to admit in evidence the reporter's transcript of the hearing held on Mr. Zimmerman's petition of November 9, 1959, to have Rene declared a ward of the court, upon the grounds the issues raised by the 1961 petition were different and that the transcript was hearsay. On its own motion it also rejected appellants' offer of testimony relating to the beneficial adjustment of Rene in her grandparents' home and her improved emotional stability, upon the grounds that such testimony was not relevant to the issues raised by the instant petition, namely, the attitude and conduct of respondent towards her child.[5]

[5]The court said "it seems to me that this proceeding is one related to the attitude of the respondent, and whether or not her interests or lack of them in the child and her conduct toward the child and all of those

With the consent and in the presence of counsel for both parties, the trial judge spoke with the minor child in chambers. After this interview the court announced that while the suggestion that she was in a "state of emotional uncertainty" was probably true, it did not think it was true to any exaggerated degree and did not feel that Rene was in any state of "spiritual unrest."

At the conclusion of the hearing, the court made its order "denying the petitioners['] application for removal of child from parental control."[6] Appellants' contentions before us may be stated as follows: 1) That in the instant proceeding based upon subdivision (c) of section 701, the court below was required to determine only (a) that the child had been a ward of the court and the parent deprived of her custody because of moral depravity for the period of one year continuously immediately prior to the filing of the petition, and (b) that the respondent parent had not been rehabilitated, the burden being upon the respondent to prove that she had become fully and permanently rehabilitated. Such burden, appellants claim, was not sustained. 2) That the court committed prejudicial error in refusing to admit in evidence the reporter's transcript of the 1959 hearing and in rejecting the offered testimony relating to beneficial adjustment of the child while in the care of appellants.

 It is clear to us that the proceedings which we review on this appeal are different in nature, purpose and effect from the earlier 1959 proceedings which resulted in Rene's being declared a ward of the court. Under the Juvenile Court Law in effect prior to the 1961 revision, proceedings to declare a person a ward of the court were had pursuant to article 7 (§§ 720-751) while proceedings to declare a person free from the custody and control of his parents were had pursuant to article 8 (§§ 775-786) here controlling. Wardship proceedings obviously involved the determination of the custody of the subject child from time to time during the necessary jurisdictional period and under the supervision of officers of the juvenile court. Such proceedings affected parental control, did not in all instances necessarily preclude it (*cf.* § 739) and did not in any way sever or bring to an end the natural relation-

---

things, that would authorize a Court or require a Court to terminate legally the otherwise natural relationship of parent and child."

[6]This was the minute order of July 28, 1961, referred to *supra*. Prior thereto the trial judge made an extensive statement in open court giving his reasons for denying the petition.

ship subsisting between parent and child. It may be said that such proceedings did not contemplate absolute finality of decision, since they contemplated various orders and modifications of them as dictated by the child's best interests.

The proceedings to declare a child free from parental control do not involve problems of custody or juvenile court supervision of the subject child. They contemplate the conclusion of such custody problems and not only termination of all parental control but the severance of the relationship between the child and its parent or parents. The finality of such proceedings is expressed in the statute.[7] As Witkin points out (3 Witkin, Summary of Cal. Law, Parent and Child, § 127, p. 2540), these proceedings are utilized to facilitate the adoption of the minor child: "The proceeding . . . is distinct in nature and purpose from the proceeding to declare a minor child a ward of the court. It deals with a *neglected* rather than a delinquent child; it is not designed to affect *actual custody* because the parents in nearly all cases have either abandoned the child or have been deprived of its custody; and it does not contemplate custody or care by Juvenile Court officers, but rather seeks to pave the way for *adoption* or other normal custody arrangements by eliminating the rights of the erring parents. (See *In re Barton* (1959) 168 Cal.App.2d 584, 586, 336 P.2d 210.)" (Original emphasis.)

We do not think that such proceedings to free a child from parental control have been invested by the Legislature with the rigid and inflexible character that appellants ascribe to them. It is clear to us that the court's consideration of the matter must proceed beyond the point of concluding merely that the mother was deprived of the custody of her child for moral depravity and that the period of a year has elapsed. The court in the instant proceedings is not finalizing an antecedent interlocutory judgment. Nor do we find in the statute, as appellants urge, any *in terrorem* provision compelling the mother to prove "to the abiding satisfaction of the court that she has become fully and permanently rehabilitated" or face the falling of the judicial sword.

No case dealing with the particular subdivision of section 701 now at hand (subd. (c)) has been cited or dis-

[7]Section 786 provided in part as follows: "After making such final order, *the court shall have no power to set aside, change, or modify it,* but nothing in this section shall be construed to impair the right of appeal." (Emphasis added.)

closed by our independent research. On analysis, the particular subdivision appears to prescribe three conditions: 1) that the parent or parents of the "person who should be declared free" *are* morally depraved; 2) that the person has been a ward of the court for the defined period of a year; and 3) that the parent or parents have been deprived of his custody for, *inter alia,* moral depravity for such period of time. We feel that the statute by using the present tense "*are . . .* morally depraved" (emphasis added) intended that such condition of moral lapse be found to exist at the time of the hearing and to be of such a character that the court would be justified in applying the drastic remedy provided for. ██ In making this determination, the court is invested with a broad discretion to consider the entire parental relationship. Section 784 in relevant part provides: ". . . the court shall proceed to hear and dispose of the case, after full and careful consideration of all the evidence presented and with due regard to the rights and claims of the parents of such person, and to any and all ties of blood or affection, but with the dominant purpose of serving the best interests of such person."

In short, we feel that the spirit of the applicable statute abhors a procrustean determination of the problem. As Mr. Justice Wood stated for this court in the case of *In re Melkonian* (1957) 152 Cal.App.2d 250, 252 [313 P.2d 52], which involved proceedings under subdivision (d) of section 701: . "The inquiry under this statute is similar to that under the guardianship statute, the fitness or unfitness of the parent and best interests of the child. In such a situation it is not possible to prescribe and apply a rigidly specific formula. As we said in *Guardianship of Smith,* 147 Cal.App.2d 686, 694 [306 P.2d 86] : 'Because human relationships and human conduct are so variable and complex it probably is impossible, and certainly undesirable, to state or to try to state a fixed formula applicable to all cases.' "

We are therefore satisfied from our examination of the record, including the statement of the court's reasons for its decision, that the trial judge gave proper consideration to all factors of the case. The court took into account the respondent mother's continued interest in and affection for her child, as well as her declared intention to improve her ways so that eventually she might regain custody. In addition, it considered her efforts to rehabilitate herself; her apparent mental illness which could be regarded as having some bearing upon her former conduct; and the psychiatric help which appar-

ently brought some improvement and offered the hope of responsible parenthood in the future. In December 1959 the respondent was found unfit because of moral depravity. From the evidence, which we have summarized, the court apparently inferred that her rehabilitation had made substantial progress. Indeed the record contains no substantial evidence of any immoral conduct on respondent's part at the time of the hearing or during a period of at least four to five months immediately preceding it. The court could then well conclude that whatever may have been her conduct in the past, respondent was not morally depraved at the time of the hearing. The trial court had the opportunity of observing respondent. It was also aware of the drastic nature of any order granting the petition (see § 785, *supra*) which would for all time sever the natural ties between mother and daughter. In the light of the entire record, we think the court could, as it did, properly conclude that the circumstances did not require that the court bring into play the drastic and irrevocable remedies provided by the statute.[8]

The above conclusion did not militate against the best interests of the child. The court had the opportunity of observing and questioning Rene. It made no change in her custody so that she remained in the care of appellants. The trial judge could have very well inferred that there was nothing in the child's condition which impelled the conclusion that only by severing the natural ties between the child and her parent could the child's best interests be subserved. As we have set forth in the last footnote, the court felt "there is no great necessity" for finally terminating the parental relationship.

In our view the evidence in the record supports the trial

---

[8]The court stated in part: ". . . I think this proceeding is limited to whether or not . . . the natural relationship of parent and child should be legally terminated. . . If I read these sections correctly, there is implicit in them a thread or undercurrent of intentional abandonment. Some of the provisions talk about abandonment per se. But the other basis for the petition and the decree, if made also, it seems to me, implies a mental attitude of abandoment, which may express itself in a number of ways—by conduct toward the child or conduct in front of the child, from which the law would necessarily have to imply an intent to abandon, to divest oneself of the normal relationship and, therefore, the normal rights of a parent and child. . . . I think every Court should make every intendment in favor of not rending asunder the natural relationship as between parent and child because that is a relationship created by divine Providence. I think it should not be lightly rent asunder.

"Coupled with that, I have in mind that as a practical matter there is no great necessity for it. . . ."

court's conclusions. We cannot say that as a matter of law the record shows that the court abused its discretion in deciding the case as it did.

The several cases relied upon by appellants do not compel a different conclusion on our part. *In re Halamuda* (1948) 85 Cal.App.2d 219 [192 P.2d 781], *In re Kapelis* (1957) 147 Cal. App.2d 801 [305 P.2d 968] and *In re Melkonian, supra,* 152 Cal.App.2d 250 are all cases involving appeals from judgments *granting* petitions to declare persons free from parental control under other subdivisions of section 701. These cases held that there was sufficient evidence to support the judgment *granting* relief, as we hold here that there is sufficient evidence to support the order *denying* it. *In re Corrigan* (1955) 134 Cal.App.2d 751 [286 P.2d 32], also cited by appellants, and involving wardship proceedings under section 700, not proceedings under section 701, is another instance where the judgments *granting* petitions to have the subject children made wards of the court were sustained by the evidence.

Appellants cite *In re Bisenius* (1959) 173 Cal.App.2d 518 [343 P.2d 319] where, upon the death of the child's father, a petition, filed by his second wife charging abandonment by the child's mother under subdivision (a) of section 701, was denied. The father had been awarded custody of the child at the time of the divorce from the child's mother and the petitioner (stepmother) had been appointed guardian of the person and estate of the child after the father's death. Upon the affirmance of this denial, the District Court of Appeal observed that the issue was whether there was an abandonment, and that the future welfare and best interests of the child were not issues. Appellants in the instant case seize upon such language in *Bisenius* as supportive of their claim that in a proceeding under subdivision (c) of section 701, if the court finds the child has been a ward of the court for a year and the mother is unfit to have its custody, the court *must* terminate the parental relationship. We find nothing in *Bisenius* which announces such a rigid formula for disposition of petitions under section 701. In *Bisenius* the trial court concluded there was no abandonment and the petition should be denied even though the best interests and welfare of the child might have been served by having her remain with her stepmother and guardian. Similarly in the instant case, the court concluded that the evidence did not show at the time of the hearing moral depravity of respondent which would warrant

granting of the petition, even though the best interests of the child might be best served by having her remain with the appellant grandparents. As we have already pointed out, these are determinations properly exercisable within the broad discretion invested in the trial court.

Appellants also rely on *Guardianship of Casad* (1951) 106 Cal.App.2d 134 [234 P.2d 647] and *Currin v. Currin* (1954) 125 Cal.App.2d 644 [271 P.2d 61]. *Casad* involved the appointment of a guardian of minor children; *Currin* involved the awarding of the custody of a minor child in a divorce action. Neither case dealt with proceedings under section 701 and neither is helpful in the way of setting forth or defining the rules governing proceedings under the statute now engaging our attention.

■ We turn to appellants' contentions pertaining to the exclusion of evidence. The court refused to admit in evidence the reporter's transcript of the 1959 hearing on the ground that it was hearsay. Appellants claim that its admission was necessary to a determination as to whether respondent had rehabilitated herself. Clearly the transcript was hearsay. No foundation was laid for its admission by showing the witnesses whose testimony it contained were unavailable for the 1961 hearing. (Code Civ. Proc. § 1870, subd. 8; see Witkin, Cal. Evidence, §§ 302-303, pp. 339-341.) ■ Quite apart from such consideration, the record discloses that the trial judge was aware of the nature and extent of respondent's conduct prior to the 1959 hearing, but directed its inquiry to her conduct subsequent to the judgment declaring Rene a ward of the court. The record of the earlier hearing was cumulative and not essential to a determination of the second petition, and the refusal of the court to admit, if error at all, was in our view certainly not prejudicial.

■ Appellants also claim that the court erred in rejecting testimony relating to the beneficial adjustment of Rene while in the home of appellants. Such testimony was not relevant or material to the issue before the court below, which was the depravity of respondent and whether her conduct towards Rene at the time of the hearing was such as to require the severance of parental ties. (See statement of trial judge set forth in footnote 5, *supra.*) The custody of the minor child was not an issue and since it remained with appellants, the rejection of the above testimony cannot be deemed prejudicial to them.

The attempted appeal from the written order signed by the court on September 5, 1961, is dismissed. The order of July 28, 1961, is affirmed.

Bray, P. J., and Conley, J.,* concurred.

*Assigned by Chairman of Judicial Council.