[Civ. No. 48180. Second Dist., Div. Five. May 20, 1977.]

In re SHANNON W. et al.,
Persons Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF PUBLIC SOCIAL
SERVICES, Plaintiff and Respondent, v.
CHARLOTTE B., Defendant and Appellant.

[Civ. No. 48622. Second Dist., Div. Five. May 20, 1977.]

In re SHANNON W. et al., Minors.
LOS ANGELES COUNTY DEPARTMENT OF ADOPTIONS,
Petitioner and Respondent, v.
CHARLOTTE B., Objector and Appellant.

COUNSEL

Kenneth A. Krekorian and Patricia A. Shanahan, under appointments by the Court of Appeal, for Defendant and Appellant and for Objector and Appellant.

John H. Larson, County Counsel, Dennis L. Myers and Jan A. Pluim, Deputy County Counsel, for Plaintiff and Respondent and for Petitioner and Respondent.

Silver & McWilliams and Louis Berson as Amici Curiae on behalf of Plaintiff and Respondent and Petitioner and Respondent.

OPINION

KAUS, P. J.—The ultimate question in these two consolidated appeals is the correctness of a judgment dated December 18, 1975, declaring the four minor children of appellant Charlotte B. free from her parental custody and control. The children are Shannon W., born August 21, 1965, Daniel R., born July 3, 1969, Amanda B., born November 19, 1971, and Tamalla B., born April 2, 1973.

On September 25, 1972, the department of public social services (DPSS) filed a juvenile court petition praying that Shannon, Daniel and Amanda be declared dependent children of the juvenile court pursuant to section 600 of the Welfare and Institutions Code. The minors were found to be dependent children on October 25, 1972, and ordered suitably placed. The placement order was terminated on April 24, 1973, and the children were returned to appellant. The dependent child status of the children was, however, continued.

Tamalla, the youngest child, had been born a few weeks before the April 1973 order. On December 11, 1973, a section 600 petition was filed as to her, together with supplemental petitions with respect to the other three children. These petitions were sustained on January 11, 1974. On January 31, 1974, the children were again ordered suitably placed. The placement was continued on August 5, 1974, and again on July 3, 1975.

Meanwhile, on June 25, 1975, the department of adoptions filed its superior court petition to declare the minors free from parental custody and control pursuant to section 232 of the Civil Code. The superior court

held several hearings on that petition in September and November 1975. On November 6, it announced its ruling sustaining the petition and ordered findings and judgment prepared.

Back to the juvenile court: There, on December 11, 1975, DPSS moved to terminate jurisdiction in view of the section 232 proceedings. Counsel for appellant objected, claiming that because of the pendency of the juvenile court proceedings, the section 232 proceedings were void and that DPSS should not, without authorization from the juvenile court, have referred the children to the department of adoptions in the first place.[1]

The juvenile court refused to terminate jurisdiction until the section 232 proceedings became final. It further ruled that appellant was not entitled to a juvenile court hearing before the initiation of the section 232 proceedings and that it would not consider the propriety of a referral from DPSS to the department of adoptions for initiation of section 232 proceedings "now or in the future." Pending finality of the section 232 proceedings, the dependent children status of the children under section 600 and their suitable placements were continued.

Appellant then filed a notice of appeal "from the order denying the motion that the Juvenile Court have a hearing on whether a matter involving these minors was properly before another branch of the Los Angeles County Superior Court." That appeal is the subject of 2d Civ. No. 48180.

As noted, judgment in the section 232 proceedings was entered on December 18, 1975. The appeal from that judgment is the subject of 2d Civil No. 48622.

*2d Civil No. 48180*

■ Respondent DPSS asserts that the order of December 11, 1975, is not appealable. While the notice of appeal is rather inartfully phrased, we construe it as an appeal from the unambiguously asserted refusal of the juvenile court to interfere with the section 232 proceedings in any manner. At the time, section 800 of the Welfare and Institutions Code permitted appeals from orders declaring "any person to be a person described in Section 600 . . . in the same manner as any final judgment,

---

[1]At the section 232 proceedings, it had appeared that Ms. Serrato, a children's service worker of DPSS, had referred the matter to the department of adoptions after going "through a great deal of ambivalence with regard to referring the case . . . ."

and any subsequent order . . . as from an order after judgment; . . ." The present appeal, if it has any validity at all, is from a "subsequent order." *In re Corey* (1964) 230 Cal.App.2d 813, 822 [41 Cal.Rptr. 379], held that "it was the legislative intent to make appealable any order of a juvenile court after judgment which affects the substantial rights of the juvenile . . . ." Since appellant's position, if valid, would have stopped the section 232 proceeding dead in its tracks, it can hardly be denied that the order of the juvenile court refusing to do so affected the substantial rights of the minors.[2] We think the order of December 11, 1975, is appealable.

We turn to the merits. Appellant's basic position is that once the children had come under the jurisdiction of the juvenile court as dependent children, "no other department of the superior court acting in a general capacity had the jurisdictional authority to act upon the matter. . . . [¶] It is inconsistent with the mode of operation required by the [juvenile court law] to allow other departments of the court acting under the general authority of superior courts to act upon cases within the Juvenile Court Law over which the juvenile court is exercising its jurisdiction." (*People* v. *Sanchez* (1942) 21 Cal.2d 466, 471 [132 P.2d 810].)

*Sanchez,* it will be recalled, involved an attempt by the superior court, sitting as a criminal court, to sentence a ward of the juvenile court to prison, although juvenile court jurisdiction over the ward was continuing. Wardship had been predicated on the very conduct for which the juvenile was sentenced to prison. This, of course, involved a clear interference with a matter over which the juvenile court was exercising jurisdiction.

This case is quite different. Until the massive 1961 changes in the juvenile court law (Stats. 1961, ch. 1616, p. 3459) proceedings to declare a minor free from the custody and control of the parents were part of the juvenile court law as former section 701 of the Welfare and Institutions Code. The 1961 legislation (Stats. 1961, ch. 1616, § 4, p. 3504) removed such proceedings from juvenile court jurisdiction and placed them in the Civil Code. (Civ. Code, § 232 et seq.) Yet even while the

---

[2]We note the similarity of *Corey*'s interpretation of section 800 and the language of subdivision 2 of section 1237 of the Penal Code which permits appeals by defendants "[f]rom any order made after judgment, affecting the substantial rights of the party." In connection with such appeals under the Penal Code, a certain body of law roughly equating appealability with merits has developed. (See, e.g., *People* v. *Williams* (1965) 238 Cal.App.2d 585 [48 Cal.Rptr. 67].) The considerations, peculiar to the administration of criminal justice, which have triggered that development, are not applicable to juvenile courts.

juvenile court still had jurisdiction over such proceedings, the essential difference between them and the ordinary business of the juvenile court was well recognized. "The proceedings to declare a child free from parental control do not involve problems of custody or juvenile court supervision of the subject child. They contemplate the conclusion of such custody problems and not only termination of all parental control but the severance of the relationship between the child and its parent or parents. The finality of such proceedings is expressed in the statute. As Witkin points out (3 Witkin, Summary of Cal. Law, Parent and Child, § 127, p. 2540), these proceedings are utilized to facilitate the adoption of the minor child: 'The proceeding . . . is distinct in nature and purpose from the proceeding to declare a minor child a ward of the court. It deals with a *neglected* rather than a delinquent child; it is not designed to affect *actual custody* because the parents in nearly all cases have either abandoned the child or have been deprived of its custody; and it does not contemplate custody or care by Juvenile Court officers, but rather seeks to pave the way for *adoption* or other normal custody arrangements by eliminating the rights of the erring parents. (See *In re Barton* (1959) 168 Cal.App.2d 584, 586, . . .)' (Original italics.)" (*In re Zimmerman* (1962) 206 Cal.App.2d 835, 843 [24 Cal.Rptr. 329].) A section 232 proceeding therefore does not conflict or interfere with the temporary custodial arrangements which the juvenile court may have made in the interests of the child. It is designed to sever the parental relationship as a first step in accomplishing the adoption of the child which, it is hoped, will make further juvenile court jurisdiction unnecessary.

Actually, the very point which appellant raises was decided adversely to her in *In re Conrich* (1963) 221 Cal.App.2d 662, 665-666 [34 Cal.Rptr. 658]. *Conrich* was an appeal by prospective adoptive parents[3] from an order declaring the minor child free from the custody of the parents. The child had previously been made a ward of the juvenile court. The appellants contended that "the superior court exceeded it jurisdiction by interfering with the juvenile court's determining the custody of the minor." (*Id.*, at p. 665.) The court thought so little of the argument that it merely pointed out that the juvenile court judge had not made a formal order placing the child with appellants for adoption.

■ Appellant also claims that DPSS violated its duty by referring the children to the department of adoptions. We disagree. Section 16501 of the Welfare and Institutions Code on which appellant relies certainly

---

[3] The court decided the case as if the natural parents were also appellants. It avoided the question of the named appellants' standing by accepting their attorney's representation that he also represented the natural parents. (*In re Conrich, supra,* 221 Cal.App.2d at p. 665; fn. *)

does not exclude the power of DPSS to refer children committed to its care to the department of adoptions. It empowers DPSS to "take such actions as are considered necessary to protect the child and correct the situation . . . ."

Appellant cites *In re Susan M.* (1975) 53 Cal.App.3d 300 [125 Cal.Rptr. 707], where a section 232 order was reversed, because the trial court had rejected proffered evidence that "child protective services" (Welf. & Inst. Code, § 16502.5) had never been considered by the Tulare County Welfare Department or the juvenile court. (*Id.,* at p. 307.) We do not see the relevance of that decision. All that *Susan M.* held was that "before initiating proceedings to declare a minor free from the custody of its parents under section 232 of the Civil Code, a county welfare department must consider child protective services . . . and must offer such services to qualified parents if deemed appropriate under the circumstances." (*Id.,* at p. 311; see also *In re Rose G.* (1976) 57 Cal.App.3d 406, 422-423 [129 Cal.Rptr. 338].) The case did not hold, as appellant suggests, that where the child is a dependent child at the time the section 232 proceedings are initiated, the superior court has no jurisdiction to proceed in the absence of a juvenile court imprimatur. All it said was that the "protective services" issue is one that the superior court may not ignore, if tendered by the parents. In the present litigation appellant never even mentioned the issue until the reply brief in the present appeal.

The appeal in 2d Civil No. 48180 has no merit.

*2d Civil No. 48622*

We now turn to the merits of the section 232 proceeding. The trial court found that all four children came within the definitions of section 232, subdivisions (a)(1), (2) and (3). The three older children were also found to come within the definition of subdivision (a)(7).[4]

---

[4]In brief, subdivision (a)(1) requires abandonment, (a)(2) demands a showing of cruelty or neglect and (a)(7) presupposes that the child has been in a foster home for at least two consecutive years. Subdivision (a)(3), on which this appeal turns, reads in relevant part: "Whose parent or parents suffer a disability because of the habitual use of alcohol, . . . if such person has been a dependent child of the juvenile court, and the parent or parents deprived of his custody because of such disability, or moral depravity, for the period of one year continuously immediately prior to the filing of the petition praying that he be declared free from the custody and control of such parent or parents. As used in this subdivision, 'disability' means any physical or mental incapacity which renders the parent or parents unable to adequately care for and control the child."

Appellant attacks the sufficiency of the findings on all grounds. Specifically, she claims that her children do not come within subdivision (a)(1) because her efforts to communicate with them have been more than "token." With respect to (a)(2) she claims that any conditions of cruelty or neglect which may have existed at some point in the past no longer prevailed at the time of the hearing. With respect to (a)(3), she asserts that the necessary finding that she was under a disability "because of the habitual use of alcohol" is not supported by the record. Concerning (a)(7), she asserts that none of the three older children had been "cared for in one or more foster homes . . . for two or more consecutive years."

Without deciding the issues, we are bound to say that there is much apparent merit to appellant's contentions with respect to (a)(1), (2) and (7). However, as far as (a)(3) is concerned the evidence amply supports the judgment.

As relevant to this case, section 232, subdivision (a)(3) contains two requirements: first, that the parent suffers from a present disability because of the habitual use of alcohol; second, that because of such disability the child has been a dependent child of the juvenile court and the parent deprived of custody for one continuous year immediately prior to the filing of the section 232 petition. Appellant does not and never has disputed that the second requirement has been met. ■ The only issue below, as well as here, is her disability due to use of alcohol at the time of the hearing.

Appellant testified. She did not dispute that she had had a drinking problem in the past. She claimed, however, that she had been receiving therapy since January 1975 and, except for "a couple of beers about two weeks ago playing horsehoes," had been "sober all the time." She claimed that her problems had been "worse than drinking." They had been "fearfulness and mental hallucinations" which she was finally getting to understand.

There was, however, considerable evidence that appellant was still drinking to excess. The paternal grandparents of the oldest child had engaged the services of a private detective who observed appellant on a number of week-ends. On August 1, 1975, nothing more was established than that one Collins, who appeared to be drunk, brought what may have been a six-pack of beer to appellant's residence. On September 11, however, appellant—again in the company of Collins—was herself observed "unsteady on her feet . . . staggering." She was carrying a beer can. Collins was observed purchasing additional beer and driving with

appellant to an address on Ohio Street. At the Ohio Street residence, an apartment, appellant participated in a party which became loud and boisterous as the evening progressed. She was seen drinking beer. Appellant and Collins did not leave the Ohio Street occasion until the next morning.

The operative made several other observations of appellant which, though far from conclusive, strongly suggest in conjunction with his other observations, that her social life was still alcohol-oriented.

The most damning evidence, however, was given by Mr. and Mrs. Raggio, who occupied the apartment below the one on Ohio Street where the private detective had made his observation. Mr. Raggio testified that he had seen appellant intoxicated on "numerous occasions" since the latter part of August 1975. Whenever appellant arrived "you can tell just the way she is dressed, looks, acts, that she's had a few before. . . ." Whether she was more intoxicated on leaving than arriving depended "on if they drink all night and make—have a party all night . . . ." Mr. Raggio was corroborated by his wife who testified that she had seen appellant drunk about seven or eight times. A couple of times she had seen appellant fall down or stumble when she appeared to be intoxicated.

No one would suggest that a mother should be permanently deprived of her children because she has been intoxicated seven or eight or even seventy or eighty times in her life. It is in the context of appellant's past problems with alcohol and her claim that she had solved them, that the evidence of the investigator and of Mr. and Mrs. Raggio assumes significance. We do not suggest that the trial court could or did base a finding of "disability because of the habitual use of alcohol" on appellant's denials. The evidence shows affirmatively that alcohol still played an important part in appellant's life. More important however, the trial court was permitted to find that appellant was subjectively sincere in claiming that she no longer had a problem, but lacked the insight to realize that, objectively, this simply was not so. The facts amply support the finding of the court under section 232, subdivision (a)(3).

All orders appealed from are affirmed.

Stephens, J., and Ashby, J., concurred.