[Civ. No. 19870. Fourth Dist.. Div. Two. May 15. 1979.]

Adoption of D. S. C., a Minor.
BLYTHE B. et al., Plaintiffs and Respondents, v.
BOYD C., Defendant and Appellant.

**18**

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla, Chief Assistant State Public Defender, and Jonathan B. Steiner, Deputy State Public Defender, for Defendant and Appellant.

Jerome Edelman for Plaintiffs and Respondents.

Russell Iungerich, under appointment by the Court of Appeal, for Minor.

## OPINION

**TAMURA, Acting P. J.**—This is an appeal from a judgment declaring a minor child free from the custody and control of his natural father pursuant to Civil Code section 232.[1]

Plaintiffs filed a petition for the adoption of minor D.S.C. and later filed a petition to declare D. S. C. free from the parental custody and control of defendant under section 232, subdivisions (a)(1) and (a)(4).[2] A

---

[1] Unless otherwise indicated. all further statutory references are to Civil Code sections.

[2] Section 232. subdivisions (a)(1) and (a)(4). provide:

"(a) An action may be brought for the purpose of having any person under the age of 18 years declared free from the custody and control of either or both of his parents when such person comes within any of the following descriptions:

"(1) Who has been left without provision for his identification by his parent or parents or by others or has been left by both of his parents or his sole parent in the care and custody of another for a period of six months or by one parent in the care and custody of the other parent for a period of one year without any provision for his support. or without communication from such parent or parents. with the intent on the part of such parent or parents to abandon such person. Such failure to provide identification. failure to provide, or failure to communicate shall be presumptive evidence of the intent to abandon. Such person shall be deemed and called a person abandoned by the parent or parents abandoning him. If in the opinion of the court the evidence indicates that such parent or parents have made only token efforts to support or communicate with the child, the court may declare the child abandoned by such parent or parents. In those cases in which the child has been left without provision for his identification and the whereabouts of the parents are unknown, a petition may be filed after the 120th day following the discovery of the child and citation by publication may be commenced. The petition may not be heard until after the 180th day following the discovery of the child.

"The fact that a child is in a foster care home. licensed under Chapter 3 (commencing

hearing on the custody and control petition was held with all parties, including the minor, represented by counsel. The evidence introduced at the hearing consisted of a probation report and a psychiatric evaluation of defendant and defendant's testimony.

Presented in the light most favorable to plaintiffs, the evidence relevant to the custody and control petition is as follows:

Defendant was paroled from state prison in February of 1975. He was then 32 years of age and had been incarcerated since the age of 19 with the exception of brief periods of release totaling approximately 1 year and 3 months. He had just finished serving 11 years for armed robbery, during which time he was involved in an escape from jail and in an attempted escape from prison. Prior to his robbery conviction, defendant had been convicted twice for car theft and once for misdemeanor car and boat theft.

Shortly after his release, defendant began living with 17-year-old Dawn Marie. During this period, defendant worked for two weeks in vacuum cleaner sales and for one week on an ice cream truck. He left his first job because his concern for Dawn Marie, who was in trouble with the juvenile authorities as a runaway, distracted him from working, and his second job because he was falsely accused of stealing. He then sustained a knee injury and was unable to work.

In May 1975, defendant and Dawn Marie were married and they lived on welfare. Dawn Marie was dissatisfied with their living conditions and urged defendant to commit crimes to raise their standard of living, which he agreed to do. The couple carried out several burglaries and were caught while burglarizing a gun store in August of 1975. When apprehended, defendant was armed with a switchblade knife and a German Luger which he had bought in Tijuana in violation of his parole. Defendant was convicted of burglary and sent first to Chino and then to

with Section 1500) of Division 2 of the Health and Safety Code, shall not prevent a licensed adoption agency which is planning adoption placement for the child, from instituting, under this subdivision, an action to declare such child free from the custody and control of his parents. When the requesting agency is a licensed county adoption agency, the county counsel and if there is no county counsel, the district attorney shall institute such action.

"..................................

"(4) Whose parent or parents are convicted of a felony, if the facts of the crime of which such parent or parents were convicted are of such nature as to prove the unfitness of such parent or parents to have the future custody and control of the child."

San Bernardino County jail. He escaped from the jail bus and was also convicted of attempted escape from the jail facility. While in Chino, defendant twice attempted suicide.

Dawn Marie gave birth to D. S. C. in May of 1976 and took the infant to visit his father in jail twice in June of 1976. In August Dawn Marie left defendant and did not communicate with him again. He attempted to contact her by letter and also attempted to locate his son through welfare authorities. In addition, defendant tried to arrange for the physical and financial care of his son through relatives, welfare agencies, and a foster care facility. Defendant did not learn the whereabouts of D. S. C. until he received notice of the custody and control hearing, at which time he wrote plaintiffs stating that he wanted his son.

While in prison, defendant completed an extensive nurse's aide training course, planning to support his son through nursing upon his release. At the time of hearing, defendant had approximately 10 months or less left to serve on his burglary conviction. Friends and relatives had offered to care for his son during the interval between hearing and release. Defendant stated that he had a strong drive to be a parent and family man and felt that the prospect of providing a home for his son had helped to sustain and rehabilitate him while in prison.

Shortly after D. S. C.'s birth, Dawn Marie had gone to live with the plaintiffs, who were interested in adopting her child. She eventually moved out of the plaintiffs' home, leaving her son with them and indicating that she would consent to the child's adoption. She told the probation officer that she did not feel she could care for D. S. C. and wanted him to be adopted so as to have a stable home life.

The trial court found in favor of defendant under section 232, subdivision (a)(1) but found against him under section 232, subdivision (a)(4). ■ ■ ■ ■ Also, pursuant to section 4600,[3] the court stated on the record that there was clear and convincing evidence that awarding the custody of D. S. C. to defendant would be detrimental to the child, while

---

[3]Section 4600 provides: "In any proceeding where there is at issue the custody of a minor child, the court may, during the pendency of the proceeding or at any time thereafter, make such order for the custody of such child during his minority as may seem necessary or proper. If a child is of sufficient age and capacity to reason so as to form an intelligent preference as to custody, the court shall consider and give due weight to his wishes in making an award of custody or modification thereof. Custody should be awarded in the following order of preference:

"(a) To either parent according to the best interests of the child.

"(b) To the person or persons in whose home the child has been living in a wholesome

placing D. S. C. in the plaintiffs' custody would serve his best interests.[4] Upon defendant's request, the adoption petition was delayed pending appeal. Plaintiffs were given custody and control of the child during the interim.

Defendant contends that the evidence does not support the court's ruling that he came within the provision of section 232, subdivision (a)(4), as a parent who has committed a felony the facts of which are of such a nature as to render him unfit to have future custody and control of his child. He argues that parenting is a fundamental right which can only be taken away if the evidence clearly shows that the situation envisioned by section 232, subdivision (a)(4), exists; that the facts of the felony of which defendant was convicted are not of the nature to bring him within section 232, subdivision (a)(4); and that the court erred in considering defendant's past criminal record in its decision to free the child from his father's custody and control. Defendant also contends that section 232, subdivision (a)(4), is unconstitutional as applied because there is no "nexus" or reasonable relationship between his criminal conduct in committing an armed burglary and his parental fitness or unfitness. Thus,

---

and stable environment.

"(c) To any other person or persons deemed by the court to be suitable and able to provide adequate and proper care and guidance for the child.

"Before the court makes any order awarding custody to a person or persons other than a parent, without the consent of the parents, it shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interests of the child. Allegations that parental custody would be detrimental to the child, other than a statement of that ultimate fact, shall not appear in the pleadings. The court may, in its discretion, exclude the public from the hearing on this issue."

[1]Our appellate courts have held that findings of fact and conclusions of law are required in section 232 proceedings and in other cases involving the custody of children, if such findings are requested by a party to the proceedings. (*In re Rose G.*, 57 Cal.App.3d 406, 416 [129 Cal.Rptr. 338]; see *In re Susan M.*, 53 Cal.App.3d 300, 315 [125 Cal.Rptr. 707]; *In re J. T.*, 40 Cal.App.3d 633, 640-641 [115 Cal.Rptr. 553].) Defendant in the case at bench did not request findings of fact and conclusions of law nor does he raise the issue of lack of findings and conclusions on appeal. We note that section 4600 requires that the court "shall make a finding that an award of custody to a parent would be detrimental to the child and the award to a nonparent is required to serve the best interests of the child," before awarding custody to a nonparent. The trial court in this case did not make written findings pursuant to section 4600. However, the court did state for the record, after weighing all the evidence and indicating its feeling that the circumstances of defendant's criminal history created an "extreme" situation of unfitness to have custody of a child, that "the evidence is clear and convincing that an award to Mr. C. as the father would be detrimental to this child, and an award to the Burketts is required to serve the best interests of the child." Our Supreme Court has recently held that such statements "constitute compliance with Civil Code section 4600. That section does not specify any particular form for findings." (*In re Richard E.*, 21 Cal.3d 349, 357 [146 Cal.Rptr. 604, 579 P.2d 495].)

defendant argues that the trial court's application of section 232, subdivision (a)(4), to his situation was arbitrary and capricious.

Plaintiffs contend that there is substantial evidence to support the judgment; that the facts of the felony for which defendant was convicted are alone sufficient to establish that he will not be a fit parent for D. S. C. in the future; and that the court did not err in considering defendant's prior criminal record in its decision. They contend as well that the paramount responsibility of the trial court was to determine what was best for the welfare and interests of the child and that defendant's parental rights should not take priority over the best interests of the child. They base this contention on the assertion that section 232.5,[5] mandating liberal construction of the chapter on freedom from custody and control in order to serve and protect the welfare and interests of the child, signals "the death knell of the parental rights doctrine in California."

We cannot agree with plaintiffs that the parental rights doctrine has been abrogated in California so that only the child's best interests need be considered in severing the legal bonds between parent and child. However, we conclude that there was substantial evidence to support the trial court's determination that defendant's felony was such as to render him an unfit parent for D. S. C. in the future; that the court's consideration of defendant's past criminal history in its decision to apply section 232, subdivision (a)(4), to free defendant's son from his custody and control and its application of the statute was neither arbitrary nor capricious.

I

## PARENTING AS A FUNDAMENTAL RIGHT

■ Plaintiffs contend that the enactment of section 232.5 in 1965 terminated the doctrine of parental rights or parental preference in California.[6] Section 232.5 mandates liberal construction of the law governing proceedings to free a child from parental custody and control

[5]Section 232.5 provides: "The provisions of this chapter shall be liberally construed to serve and protect the interests and welfare of the child."

[6]For detailed accounts of the history of the parental preference doctrine in California, see Bodenheimer, *New Trends and Requirements in Adoption Law and Proposals for Legislative Change*, 49 So.Cal.L.Rev. 10; Porter & Walsh, *The Evolution of California's Child Custody Laws: A Question of Statutory Interpretation*, 7 Sw.U.L.Rev. 1; *In re Carmaleta B.*, 21 Cal.3d 482 [146 Cal.Rptr. 623, 579 P.2d 514]; *In re B. G.*, 11 Cal.3d 679 [114 Cal.Rptr. 444, 523 P.2d 244].

in order "to serve and protect the interests and welfare of the child." One appellate court has relied in part on this liberal construction directive to find abandonment in freeing a child for adoption under section 232, subdivision (a)(1). (*In re Morrow,* 9 Cal.App.3d 39, 57 [88 Cal.Rptr. 142], overruled on other grounds in *Hollister Convalescent Hosp., Inc.* v. *Rico,* 15 Cal.3d 660, 672-673 [125 Cal.Rptr. 757, 542 P.2d 1349].) In two cases of recent vintage, however, our Supreme Court, while explaining that the Family Law Act has changed the approach the courts must take in deciding whether a parent or nonparent should have custody of a minor child, has concluded that parenting is still a fundamental right. (*In re Carmaleta B., supra,* 21 Cal.3d 482; *In re B. G., supra,* 11 Cal.3d 679.)

*In re B. G., supra,* 11 Cal.3d 679, dealt with the juvenile court award of *physical* custody of a minor to foster parents pursuant to section 4600. The court held that the juvenile court need not find parents unfit in order to give physical custody to nonparents under section 4600, though it must find that placing the child in parents' custody would be detrimental to the child and that placing the child with a third party would be in the child's best interests. The court stated: "In summary, the parental preference doctrine, as it existed before the enactment of the Family Law Act, embodied both a requirement that a custody order in favor of a nonparent rest upon a finding of parental unfitness, and the limitation that such an order would be made only in extreme cases. The enactment of section 4600 changes the former principle and *focuses attention not on the unfitness of the parent but the detriment to the child.* (See *Guardianship of Marino, supra,* 30 Cal.App.3d 952, 958 [106 Cal.Rptr. 655].) The Legislature did not, however, intend to disturb the judicial practice of awarding custody to nonparents in preference to parents only in unusual and extreme cases. (See Attorney's Guide to Family Law Act Practice (Cont.Ed.Bar (2d ed.) 1972) pp. 283-284.)" (*Id.,* at p. 698; italics added.)

In *In re Carmaleta B., supra,* 21 Cal.3d 482, the Supreme Court reviewed the freeing of five children from a mother's custody and control under section 232, subdivisions (a)(2), (6) and (7). The court declared that "[p]arenting is a fundamental right," to be "disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood." (*Id.,* at p. 489.) It concluded that in order to sever the *legal* relationship between parent and child, the court's findings must be "supported by substantial evidence such that the situation contemplated by the statute [section 232] arises, and severing the parental relationship becomes the least detrimental alternative for the children. [Citations.]" (*Id.*) Thus, in determining whether the legal relationship between child and natural

parent should be severed, the right of parenting is not to be subordinated to the best interests of the child. Rather, the parental right to a legal relationship with the child is to be terminated only if the parent is found to be unfit and parental custody is found to be harmful to the child.

While acknowledging that parenting is a fundamental right, the court in *In re Carmaleta B.* stressed that the decision to free a child from custody and control of the parent rests within the sound discretion of the trial court *(id.,* at pp. 494, 496), and quoting *In re Zimmerman,* 206 Cal.App.2d 835, 843 [24 Cal.Rptr. 329], stated that such proceedings had not been invested by the Legislature with a " 'rigid and inflexible character. . . .' " It is in the light of this explanation of the discretionary and flexible nature of a proceeding to free a minor child from the custody and control of its parent that we examine the trial court's ruling in the instant case.

II

SUBSTANTIALITY OF THE EVIDENCE

■ Defendant contends that the evidence was insufficient to sustain the finding that his felonious behavior in committing an armed burglary would render him an unfit parent to D. S. C. in the future. ■ One who attacks the sufficiency of the evidence to support a finding is faced with the following rules on appellate review: " 'A reviewing court must accept as true all evidence tending to establish the correctness of the findings of the trial judge. All conflicts in the evidence must be resolved in favor of the respondents and all legitimate and reasonable inferences must be indulged in to uphold the judgment. ■ It is well settled that whenever a finding or judgment of the trial court is attacked as being unsupported, the power of the reviewing court begins and ends with the determination of whether there is any substantial evidence, contradicted or uncontradicted which will support the conclusions reached by the trial court. [Citation.] ■ All evidence most favorable to respondents must be accepted as true and that which is unfavorable discarded as not having sufficient verity to be accepted by the trier of fact. If the evidence so viewed is sufficient as a matter of law, the judgment must be affirmed [citation.]' " *(In re Morrow, supra,* 9 Cal.App.3d 39, 46, quoting from *In re Gano,* 160 Cal.App.3d 700, 705 [325 P.2d 485]; see 6 Witkin, Cal. Procedure (2d ed. 1971) §§ 245-254, pp. 4236-4246.) ■ In addition, where a trial court has discretionary power to decide an issue, a reviewing court will not disturb that decision unless the trial court has exceeded the

limits of legal discretion by making an arbitrary, capricious, or patently absurd determination. (*Brown* v. *Newby*, 39 Cal.App.2d 615, 618 [103 P.2d 1018]; *Gossman* v. *Gossman*, 52 Cal.App.2d 184, 195 [126 P.2d 178]; 6 Witkin, Cal. Procedure (2d ed. 1971) §§ 242-244, pp. 4234-4236.)

Viewing the evidence in light of these rules and indulging in all reasonable inferences, we hold that the evidence was sufficient to support the trial court's ruling that defendant's felony conviction rendered him unfit to be a parent to D. S. C. in the future. Defendant's crime consisted of an armed burglary with his 17-year-old wife as an accomplice. This crime was but one of a series of burglaries in which the couple engaged in order to better their standard of living. During the crime, defendant carried a gun in violation of parole, which he acknowledged he had bought on a trip to Mexico in further violation of parole. From these facts, the trial judge could reasonably have inferred that defendant had a propensity to violent crime, that he did not hesitate to involve family members of a tender age in crime, that he would turn to crime in the future should he find difficulty in making a living, and that he might violate parole and thus place himself in jeopardy of being taken from his family and returned to prison. The evidence and the reasonable inferences to be drawn therefrom were sufficient for the judge to determine that defendant was unfit to have the future custody and control of D. S. C. and that placing D. S. C. in defendant's custody would be detrimental to the child. The trial court did not exceed the bounds of the discretion with which it is vested in making this determination, since there was a reasonable, considered basis for the decision.

Defendant argues that, since the felony in which he engaged was not nearly so "heinous" as that committed by defendant in *In re James M.*, 65 Cal.App.3d 254 [135 Cal.Rptr. 222], section 232, subdivision (a)(4), cannot be applied to him. *In re James M.*, posed a different question from that presented by this appeal. There the appellate court was asked to decide whether second degree murder by a father of his wife should as a matter of law preclude him from having subsequent custody of his children. The appellate court concluded that the mitigating circumstances of the particular crime—provocation, heat of passion, and the fact that violence was totally out of character—were sufficient for the trial court to find that the father was not an unfit parent, that his children would not be harmed by being in his custody, and that second degree murder did not prove unfitness as a matter of law. In the case at bench, we are in effect being asked to rule as a matter of law that armed burglary can never be proof of unfitness. However, as we have demonstrated, the evidence was

sufficient for the trial judge to find that the particular circumstances of defendant's crime rendered him an unfit parent, and that his child would be harmed by being in his custody. We conclude that the crime of armed burglary may in some circumstances render the perpetrator an unfit parent.

## III

### PAST CRIMINAL HISTORY

■ Defendant maintains that the trial court improperly considered his past criminal history in making its determination that the circumstances of his felony rendered him unfit for the future custody and control of D. S. C. He argues that, in wording section 232, subdivision (a)(4), to cover "a felony" and "the facts of the crime" committed by a parent, the Legislature intended that only the felony of which the parent was currently under conviction should be considered in deciding fitness of the parents to have future custody and control. We cannot agree with this unduly restrictive interpretation of section 232, subdivision (a)(4).

In *In re Carmaleta B., supra,* 21 Cal.3d 482, 493, this state's high court acknowledged the doctrine that present circumstances must be considered in deciding whether a freedom from custody and control order is justified. However, it also concluded that evidence of past activities may be entertained in such proceedings: "It is well settled that an order to free a child from parental custody and control must rest on present circumstances as well as past acts although such prior acts are evidence which may be considered by the court in deciding whether there is sufficient showing to justify the order."

The trial court in *Carmaleta* considered evidence of past neglectful conduct in finding present neglect under section 232, subdivision (a)(2). In support of this procedure, the Supreme Court cited *In re Morrow, supra,* 9 Cal.App.3d 39, in which an order freeing a child from custody and control of its natural mother because of her abandonment and past neglect was upheld. The court also cited several cases which were decided before enactment of the Family Law Act: *In re Zimmerman, supra,* 206 Cal.App.2d 835, 844-845; *In re Cardenas,* 194 Cal.App.2d 849, 855 [15 Cal.Rptr. 238]; and *In re Williams,* 133 Cal.App.2d 515 [284 P.2d 510]. In light of these precedents, we hold that past criminal activities may be considered in deciding whether a natural parent has rendered himself an unfit parent for the future by commission of a felony. In the words of the

*Cardenas* court, "the trial court would be naive indeed if it failed, on the subject of present fitness, to take into account appellant's cogent history of [criminal behavior] extending over many years." (*In re Cardenas, supra,* 194 Cal.App.2d 849, 855.)

## IV

### CONSTITUTIONALITY OF SECTION 232, SUBDIVISION (a)(4), AS APPLIED

Section 232, subdivision (a)(4), has already successfully weathered a challenge of unconstitutionality on its face. In *In re Michele C.,* 64 Cal.App.3d 818, 822-823 [135 Cal.Rptr. 17], a natural parent contended that the subdivision was unconstitutional because it permitted the state to sever the legal relationship between parent and child "solely because of a criminal conviction." The parent, who had been convicted of murdering an older child in a brutal child abuse incident which took place only 22 days before the birth of Michele, did not complain that the facts of the case were insufficient to support the judgment against him. Rather, he argued that the statute was invalid because it failed to require the court to "concern itself with the current parent-child relationship or the *present* fitness of the parent." (*Id.,* at p. 822; original italics.) The appellate court pointed out that the subdivision must be read and harmonized with section 4600 which directs the trial court to make findings that the child will be harmed if it is placed with its parents and that placement with the third party will be in its best interests. It concluded that this additional requirement compelled the trial court to concern itself with both the felonious behavior and its effect on fitness to parent, thus dispelling any taint of unconstitutionality. In *In re Carmaleta, supra,* 21 Cal.3d 482, 495-496, our Supreme Court pointed out that the section 4600 finding of detriment had been required in section 232 cases, and remanded the case for a new trial partly because the lower court had failed to make section 4600 findings.

In the instant case, defendant contends that section 232, subdivision (a)(4), is unconstitutional as applied because there is no "nexus" or reasonable relationship between his felonious behavior in committing an armed burglary and the question of his fitness to parent. ■ Substantive due process requires that legislation "must not be unreasonable, arbitrary or capricious but must have a real and substantial relation to the object sought to be obtained." (*Gray* v. *Whitmore,* 17 Cal.App.3d 1, 21 [94 Cal.Rptr. 904]; see *In re Michele C., supra,* 64 Cal.App.3d 818, 822-823;

*Nebbia* v. *New York,* 291 U.S. 502, 525 [78 L.Ed. 940, 949, 54 S.Ct. 505, 89 A.L.R. 1469]; *West Coast Hotel Co.* v. *Parrish,* 300 U.S. 379, 391 [81 L.Ed. 703, 708, 57 S.Ct. 578, 108 A.L.R. 1330].) ■ Accordingly, we note that the trial court in this case properly considered subdivision (a)(4) in conjunction with section 4600 and made findings as to future harm and best interests of the child. Further, we point out that our review of the evidence of this case has already shown that the trial court had sufficient basis to find that defendant would be an unfit parent in future, that harm would come to the child through being placed with him. The inferences which the court could properly draw from the evidence before it were indeed sufficient to establish a reasonable relationship between defendant's crime and his ability to parent. The trial court was neither arbitrary nor capricious in its application of section 232, subdivision (a)(4), to defendant's behavior and the subdivision is not unconstitutional as applied.

The judgment is affirmed.

Kaufman, J., and McDaniel, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 12, 1979.