[No. D046838. Fourth Dist., Div. One. Jan. 27, 2006.]

In re BABY GIRL M., a Minor.
R.S. et al., Petitioners and Respondents, v.
ROBERT W., Objector and Appellant.

CARLA W., Plaintiff, v.
ROBERT W., Defendant.

1530

## Counsel

Valerie N. Lankford, under appointment by the Court of Appeal, for Objector and Appellant.

Law Office of Gradstein & Gorman, Marc Gradstein, Jane A. Gorman and Seth F. Gorman for Petitioners and Respondents.

Andrea R. St. Julian, under appointment by the Court of Appeal, for Minor.

## Opinion

IRION, J.—In this appeal we review a juvenile court judgment terminating the parental rights of Robert W. under Family Code[1] section 7825 as to his biological daughter, Baby Girl M. Section 7825 authorizes the termination of parental rights when a parent has been convicted of a felony the facts of which "are of such a nature so as to prove the unfitness of the parent" to have "future custody and control of the child." (*Id.*, subd. (a)(2).) In accordance with this statutory language, and the fact that the involuntary termination of parental rights is an extreme measure implicating core constitutional rights, section 7825's reach traditionally has been limited to those situations where a parent commits a heinous felony offense, often against a family member, which in and of itself demonstrates that the parent will be forever unfit to have any measure of custody of his or her children.

In the instant case, the juvenile court terminated Robert's parental rights based on: felony convictions for burglary, attempted burglary and drug possession; an extensive misdemeanor criminal record; and the court's finding that Robert had not "adequately addressed the problems which have led to his criminality." While we recognize the juvenile court's legitimate misgivings about Robert's parental fitness based on his general criminal record, the court's ruling revoking his parental rights on this basis is contrary

---

[1] All statutory references are to the Family Code unless otherwise specified.

to the Legislature's intent as expressed in the statutory text of section 7825 and the corresponding legislative history. Our review of those materials demonstrates that the Legislature, in amending the statute in 1976, clearly intended that section 7825 apply to terminate parental rights only where a parent's unfitness is demonstrated by *the facts* underlying a felony conviction. (Stats. 1976, ch. 940, § 2, p. 2151.) Where—as in this case—a parent's fitness is called into question by factors other than the facts underlying a felony conviction, the Legislature intended that courts would apply other statutory provisions relating to child welfare, which as a general matter contain more gradual termination procedures and include procedural safeguards absent from section 7825. Consequently, we reverse.

We also remand, as requested by Baby Girl M.'s prospective adoptive parents, R.S. and K.S. (the S.'s), for the juvenile court to determine guardianship and custody—matters that are by no means resolved by our conclusion that the extreme measure of the permanent termination of Robert's parental rights was unauthorized.

## FACTUAL AND PROCEDURAL BACKGROUND

In February 2005, Robert's estranged wife Carla W. gave birth to Baby Girl M. Carla, who claimed that Baby Girl M.'s biological father was not Robert but a man named "Justen," authorized Baby Girl M.'s adoption by the S.'s. Baby Girl M. was placed in the S.'s care shortly after her birth. In March 2005, the S.'s filed a petition in superior court to adopt Baby Girl M. Robert contested the adoption, alleging that he was the child's biological father, an allegation that was proven by subsequent genetic testing.

Robert subsequently filed a petition seeking visitation rights and custody of Baby Girl M. In support of his petition, Robert submitted reports by a private investigator who interviewed Robert, his fiancée and his mother. These reports, and later hearing testimony, stated that Robert has been living with his mother, sister, and his other three children since his release from custody in December 2004 and was, according to the interviewees, a good father to these children.

In June 2005, the S.'s filed a petition under section 7825 to terminate Robert's parental rights with respect to Baby Girl M., alleging that Robert's prior felony convictions rendered him an unfit parent; they also petitioned for guardianship of Baby Girl M. The various petitions were consolidated and the juvenile court acted first on the S.'s section 7825 petition, deferring ruling on the guardianship petition and other related petitions filed by the parties.

In July 2005, the juvenile court held a hearing on the section 7825 petition at which the S.'s, Robert, Robert's fiancée, two social workers, and a psychologist testified. The hearing lasted approximately three hours. The evidence adduced at the hearing, examined in the light most favorable to the prevailing party (*In re James M.* (1976) 65 Cal.App.3d 254, 265 [135 Cal.Rptr. 222] (*James M.*)), is as follows.

Robert has three felony convictions: (1) a 1991 conviction for attempted burglary; (2) a 1993 conviction for possession of methamphetamine; and (3) a 1997 conviction for burglary. The evidentiary record reveals these convictions to be based on the following facts:

(1) *1991 Attempted Burglary*: Robert knocked on the door of a residence and when no one answered drove his car into the driveway, climbed the fence to the backyard and tried to pry open a window with a stick. Robert's unsuccessful efforts to enter the residence were observed, the police were called and he was arrested. Robert pleaded guilty to attempted burglary.

(2) *1993 Possession of Methamphetamine*: There was no evidence admitted at the hearing with respect to the facts underlying this conviction, except that Robert pleaded guilty.[2]

(3) *1997 Burglary*: Robert and an accomplice climbed a wall into the backyard of an unoccupied home and opened a bedroom window. After removing a screen, the accomplice went through the window, unlocked a sliding glass door, and both men removed valuables from the house. As they were exiting, a neighbor yelled at them and they dropped some of the valuables and fled in their car. The neighbor recorded the license plate number of the car and they were later apprehended.[3]

Robert testified at the hearing. He admitted to having the three felony convictions, as well as a number of misdemeanor convictions, including two

---

[2] An attachment to the S.'s trial brief includes a rough summary of the purported facts of the drug conviction that indicates the conviction resulted from a traffic stop where Robert, a passenger in the car, was found to have drugs in his pocket. The S.'s summary also contains the sentence: "[Robert] revealed knife and sheath," without any further explanation. Even were we to determine that this information supported termination of Robert's parental rights, we could not rely on it because the S.'s counsel agreed not to "offer[] the trial brief or the attachment thereto into evidence," after an objection by Robert's counsel regarding its filing. The trial brief attachment references "trial exhibit 14" as the source of the information contained therein, but there was no exhibit 14 at the hearing, and the exhibit that appears to correspond to this entry, exhibit 5, does not contain these facts.

[3] We presume for purposes of this appeal that these are the facts of the underlying felonies because there does not appear to have been any objection to the admission of the source material for these facts: unauthenticated police reports submitted by the S.'s attorney.

convictions for domestic violence. He also admitted using methamphetamine extensively in the past, failing to enroll in a spousal abuse treatment course required by the terms of his probation for the most recent misdemeanor domestic violence conviction, and not being currently enrolled in any drug treatment program. Robert's fiancée, a supervisor for the Department of Social Services in Victorville, testified on Robert's behalf, stating that Robert was a good parent to his children and very involved in their lives. She also acknowledged that she had visited Baby Girl M. in the S.'s home and the child appeared comfortable there.

The S.'s each testified, explaining that they had been caring for Baby Girl M. since her birth and she was flourishing in their home. In addition, they stated that were they to be awarded custody of Baby Girl M., they would remain open to her forming and maintaining a relationship with Robert and her biological siblings, Robert's other children. A psychologist, Patricia Yglesias, testified that Baby Girl M. is closely attached to the S.'s, who have become her "psychological parents," and is "thriving" in their home. Yglesias opined that there was a "high likelihood of detriment" if Baby Girl M. were removed from the S.'s care. In part, Yglesias testified, this was because Baby Girl M. had been exposed to methamphetamine and alcohol prior to her birth, making her more vulnerable to negative effects of disruption. If removed from the S.'s custody, Yglesias testified, Baby Girl M. "may have difficulty reestablishing a parent/child relationship that's secure and loving and reciprocal."

At the conclusion of the hearing, the court terminated Robert's parental rights. The court subsequently issued a written ruling with the following pertinent findings:

"(1) Robert W[.] is the biological and presumed father of . . . Baby Girl M[.]

"(2) Robert W[.] is a parent within the meaning of [section] 7825, in that he has been convicted of a felony, the facts of which are of such a nature so as to prove the unfitness of the parent to have the future custody and control of the child.

"(3) In making this determination, the court considered the fact that Mr. W[.] has been convicted of three felonies, as well as having a long history of misdemeanor criminal convictions, and that he has never adequately addressed the problems which have led to his criminality and has failed to show rehabilitation."

"(5) Granting the petition is necessary to serve the child's best interests, and placement of the child with [Robert] would be detrimental to her."

"(7) The parental rights of Robert [W.] to . . . Baby Girl M[.] are terminated."

## DISCUSSION

Robert appeals the juvenile court's termination of his parental rights. While Robert frames his appeal as a challenge to the sufficiency of the evidence to support the juvenile court's ruling, his contention is primarily a legal one. Robert contends that a termination of parental rights is not authorized by section 7825 absent some evidence that *the facts underlying* a felony conviction, as opposed to the mere existence of the conviction or convictions, prove parental unfitness. In light of the express language of the statute, and the case law interpreting it, we are compelled to agree.

I

*The Fundamental Nature of Parental Rights and Standard of Review for a Termination Order*

The termination of parental rights is "a drastic remedy to be resorted to only in extreme cases." (*In re Terry E.* (1986) 180 Cal.App.3d 932, 949 [225 Cal.Rptr. 803] (*Terry E.*); see *In re Angelia P.* (1981) 28 Cal.3d 908, 916 [171 Cal.Rptr. 637, 623 P.2d 198] (*Angelia P.*) [" 'Parenting is a fundamental right, and accordingly, is disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood' "]; see also *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 848 [4 Cal.Rptr.2d 615, 823 P.2d 1216] (*Kelsey S.*) ["The child has a genetic bond with its natural parents that is unique among all relationships the child will have throughout its life"].)

The "fundamental" nature of parental rights requires that there be clear and convincing evidence of the facts necessary to terminate such rights. (*Terry E.*, *supra*, 180 Cal.App.3d at p. 949; *Santosky v. Kramer* (1982) 455 U.S. 745, 759 [71 L.Ed.2d 599, 102 S.Ct. 1388] [in light of the "fundamental liberty interest" at stake, the facts underlying termination of parental rights must be proven by at least clear and convincing evidence]; *Angelia P.*, *supra*, 28 Cal.3d at pp. 915–916 ["the very essence of the proceeding is the complete and final legal termination of a relationship which is biological in nature and most personal in form"]; *In re Marriage of O'Connell* (1978) 80 Cal.App.3d 849,

855 [146 Cal.Rptr. 26] [an order to terminate parental rights constitutes a "termination of a most fundamental and basic civil right" and "results in a total severance of the natural ties between the parent and the child"].) This standard mandates " 'that the evidence be " 'so clear as to leave no substantial doubt'; 'sufficiently strong to command the unhesitating assent of every reasonable mind.' " ' " (*Terry E.*, at p. 949, quoting *Angelia P.*, at p. 919.)

The decision to terminate parental rights lies in the first instance within the discretion of the juvenile court, and will not be disturbed on appeal absent an abuse of that discretion. (*In re Arthur C.* (1985) 176 Cal.App.3d 442, 446 [222 Cal.Rptr. 388] (*Arthur C.*).) While the abuse of discretion standard gives the court substantial latitude, "[t]he scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' " (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704].) "Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." (*Id.* at pp. 1297–1298.) With respect to challenged factual findings, we will affirm "if there is any *substantial* evidence to support the trial court's findings," i.e., "if the evidence is reasonable, credible and of solid value—such that a reasonable trier of fact could find that termination of parental rights is appropriate based on clear and convincing evidence." (*Terry E.*, *supra*, 180 Cal.App.3d at p. 949, citing *Angelia P.*, *supra*, 28 Cal.3d at p. 924.)

## II

### *A Termination of Parental Rights Under Section 7825 Must Be Based on the Facts Underlying a Felony Conviction*

The sole legal ground urged by the S.'s and relied upon by the juvenile court in terminating Robert's parental rights was that Robert's felony convictions rendered him an unfit parent under section 7825. We begin, therefore, by analyzing the pertinent statute and the principles governing its application.

### A

### *Statutory Text and Legislative History of Section 7825*

Section 7825, subdivision (a) provides for the permanent termination of parental rights ". . . where both of the following requirements are satisfied:

"(1) The child is one whose parent or parents are convicted of a felony.

"(2) The facts of the crime of which the parent or parents were convicted are of such a nature so as to prove the unfitness of the parent or parents to have the future custody and control of the child."

This statutory language is the result of a 1976 amendment to the statute intended to "[l]imit the use of a person's felony conviction as a grounds for depriving him or her of custody or control of his or her children." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 4355 (1975–1976 Reg. Sess.) as amended May 28, 1976, p. 1.)[4] The legislative history of that amendment demonstrates two aspects of the Legislature's intent with respect to application of the statute as amended. First, the Legislature intended the statute to apply only when *the facts* underlying a felony conviction demonstrate future parental unfitness. Second, when a parent's fitness is called into question by something other than the facts underlying a felony conviction, the Legislature intended that courts would rely on *other statutory provisions*, and not section 7825, to terminate parental rights and/or remove the child from a natural parent's custody.

The 1976 amendment made two substantive changes to the statute. First, the amendment altered the statutory language so that it now "focuses on the facts" underlying the felony conviction as opposed to the felony conviction itself. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 4355 (1975–1976 Reg. Sess.) as amended May 28, 1976, p. 3 [the "existing law focuses on the crime itself, but the bill focuses on the facts of the crime"].)[5] Second, the amendment eliminated statutory language that had allowed termination of parental rights "on the grounds of a lengthy sentence" of incarceration. (Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 4355 (1975–1976 Reg. Sess.) as amended May 28, 1976, p. 1 [Assem. Bill. No. "4355 would delete the last provision which allows the termination of

---

[4] We consult the legislative history of a statute if there is ambiguity in the statute and " ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute." ' " (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].)

[5] Prior to 1976, the statute authorized termination of parental rights for any child "[w]hose parent or parents are convicted of a felony, *if the felony* of which such parent or parents were convicted *is of such nature* as to prove the unfitness of such parent or parents to have the future custody and control of the child, *or if any term of sentence of such parent or parents is of such length that the child will be deprived of a normal home for a period of years*." (Former Civ. Code, § 232, subd. (a)(4); Stats. 1976, ch. 653, § 1, p. 1616, italics added for language amended by Stats. 1976, ch. 940, § 2, p. 2151.) Former Civil Code section 232, subdivision (a)(4) is the predecessor to section 7825. (*In re Cody W.* (1994) 31 Cal.App.4th 221, 226 [36 Cal.Rptr.2d 848].)

parental rights on the grounds of a lengthy sentence"]; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 4355 (1975–1976 Reg. Sess.) as amended May 28, 1976, p. 2 [under the bill, "an action could no longer be predicated upon conviction of a felony the sentence for which is of such length that the child will be deprived of a normal home for a period of years"]; Legis. Counsel's Dig., Assem. Bill No. 4355 (1975–1976 Reg. Sess.) 4 Stats. 1976, Summary Dig., p. 241 [the amendment "would delete authority for such an action where such parent or parents are sentenced to a term of such length that would deprive the child of a normal home for a period of years"].)

The legislative history also reveals that the Legislature recognized that limiting the statutory authority for the termination of parental rights of felony offenders in this way had the potential to result in children remaining in the custody of parents of questionable fitness. Both the Senate Committee on the Judiciary and the Assembly Committee on Criminal Justice, in their analyses of the bill, emphasized, therefore, that passage of the bill would not alter other provisions of California law, which remained available to terminate parental rights or remove a child from a parent's custody where the parent was unfit for reasons other than the facts underlying a particular felony conviction. (Assem. Com. on Criminal Justice, Analysis of Assem. Bill No. 4355 (1975–1976 Reg. Sess.) as amended May 28, 1976, p. 2 [noting in "Bill Description" that other provisions of law still provide for termination of parental rights based on: abandonment, neglect, parental disability due to alcohol/drug use or mental deficiency, and dependency placement in juvenile court for two years and a finding of detriment; and stating in "Comments" that "Existing law already allows for termination of parental rights if there are two years of W[elfare] & I[nstitutions Code § ] 600 placement"]; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 4355 (1976–1976 Reg. Sess.) as amended May 28, 1976, p. 3 [noting same provisions of law that would be unchanged by amendment and stating that proponents of the bill "point out" that other statutory provisions "permitting temporary removal of a minor from his parents' custody would not be affected by the bill"]; Assem. Off. of Research, 3d reading analysis of Assem. Bill No. 4355 (1975–1976 Reg. Sess.) as amended May 28, 1976, p. 1 ["Existing law already provides for termination of parental rights if the child is in placement by the juvenile court, welfare department or other child placing agency for a period of two years and the court finds that the return of the child to the parents would be detrimental or that the parents will be unable to provide for the child"].)[6]

---

[6] For example, the Legislature referenced the statutory provision now codified in section 7824, which authorizes the termination of parental rights, under certain circumstances, when a parent is "unable to care for and control the child adequately" due to the parent's "habitual" use of alcohol or controlled substances. (*Id.*, subds. (a) & (b)(1).)

Consequently, it is clear that section 7825 is intended to be distinct from other statutory provisions relating to child welfare, such as those that govern dependency, custody or guardianship proceedings; unlike those provisions, under section 7825 "the welfare of the child is not the sole determining factor." (*Terry E.*, *supra*, 180 Cal.App.3d at p. 953; compare *In re Christopher I.* (2003) 106 Cal.App.4th 533, 550 [131 Cal.Rptr.2d 122] ["In the context of juvenile dependency, weighing the best interests of the dependent child is always the court's paramount concern"]; *Guardianship of Zachary H.* (1999) 73 Cal.App.4th 51, 68–69 [86 Cal.Rptr.2d 7] (*Zachary H.*) [upholding appointment of nonparent guardian over objection of natural parent despite absence of any finding that the natural parent was unfit].) Rather, section 7825's focus is on the *parent*, "requir[ing] clear and convincing proof of the parent's unfitness to have the future custody and control of the child," and such unfitness must be demonstrated by *the facts* underlying a felony conviction. (*Terry E.*, at p. 953; see § 7825, subd. (a)(2).) Where parental unfitness is demonstrated not by the facts underlying a felony conviction, but by other factors, courts must rely on other statutory provisions, if applicable, to terminate a parent's parental rights.

B

*Case Law Regarding Termination of Parental Rights Based
on a Felony Conviction*

■ Given the statutory text and legislative history, as well as the fundamental rights to parenting that are at stake, courts interpreting section 7825 and its predecessor statute have upheld termination of parental rights only where felony convictions have involved egregious underlying facts that have a direct bearing on parental fitness, such as the murder of a family member. For example, in *In re Sarah H.* (1980) 106 Cal.App.3d 326, 328 [165 Cal.Rptr. 61], the father beat the mother to death in the children's presence, and four months later he killed a man in a bar. In *In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420 [159 Cal.Rptr. 460] (*Geoffrey G.*), the father "violently strangled [the child's] mother after having consumed a substantial amount of intoxicants the night before" and his "criminal record showed numerous past arrests and convictions for intoxication." In *In re Mark V.* (1986) 177 Cal.App.3d 754, 756 [225 Cal.Rptr. 460] (*Mark V.*), the father fatally stabbed the mother while the children were asleep in the residence. (See also *Arthur C.*, *supra*, 176 Cal.App.3d at p. 444 [upholding termination of father's parental rights where father, with extensive history of violence and substance abuse, stabbed mother 17 times in the neck, chest, abdomen, back and extremities].)

Further, even where such egregious underlying facts of intrafamily violence and/or depravity underlie a felony conviction, the record may *still* be insufficient to "prove the unfitness of the parent [for] future custody" under section 7825, subdivision (a)(2). In *James M., supra,* 65 Cal.App.3d at pages 259, 265, the reviewing court upheld the trial court's determination that the underlying facts of a murder conviction were insufficient for the termination of parental rights where the father stabbed the mother 22 times and received a five-years-to-life sentence. Similarly, in *Terry E., supra,* 180 Cal.App.3d at pages 937–939, 950–954, the Court of Appeal *reversed* a judgment terminating parental rights despite the parent's felony convictions for false imprisonment (Pen. Code, § 236), oral copulation (*id.,* § 288a, subd. (d)) and penetration by a foreign instrument (*id.,* § 289), all of which resulted from an overnight abduction of a victim who, while bound and threatened with death, was repeatedly forced to perform sex acts.[7]

In light of this body of case law, the S.'s recognize that the underlying facts of Robert's felony convictions are unlike those relied on in previous cases upholding the termination of parental rights. They nevertheless argue that the juvenile court's ruling was proper based on other factors, including Robert's general "criminal record," failure to "adequately address[] his drug problem," "lack[ of] credibility," "failure to act like a responsible parent," and likelihood that he would "offend again based upon his extensive past, thus leaving [Baby Girl M.] without a stable home."

In making this argument, the S.'s rely on the sole California case affirming parental rights termination absent the egregious crimes of intrafamily violence noted *ante, Adoption of D. S. C.* (1979) 93 Cal.App.3d 14, 19 [155 Cal.Rptr. 406] (*Adoption of D. S. C.*). *Adoption of D. S. C.,* however, does not support the S.'s core contention that parental unfitness under section 7825 can be demonstrated through means other than *the facts underlying a felony conviction.*

In *Adoption of D. S. C.,* the parent's rights were terminated not based on a generalized history of crime and irresponsibility, but because of the facts underlying a particular felony armed burglary conviction. (*Adoption of D. S. C., supra,* 93 Cal.App.3d at pp. 25–26.) The court emphasized that the conviction arose from "a series of burglaries" committed by the parent with his 17-year-old wife, and that the parent committed the burglaries while on parole

---

[7] In addition, the parent in *Terry E.* had a history of drug abuse and committed the felonies in her home while her children, who were the subject of the parental rights termination proceeding, were present. (*Terry E., supra,* 180 Cal.App.3d at pp. 951, 953.) The Court of Appeal, while acknowledging that the parent was not *presently* fit to exercise custody or control of her children, emphasized the potential for her to become fit to do so at some point in the future in reversing the trial court's ruling. (*Ibid.*; see § 7825, subd. (a)(2) [requiring proof that parent will be unfit to exercise "future" custody and control of child].)

for armed robbery and while armed with an illegally purchased firearm and switchblade knife. (*Ibid.* ["as we have demonstrated, the evidence was sufficient for the trial judge to find that *the particular circumstances of defendant's crime* rendered him an unfit parent," italics added].) Thus, in the court's view, the facts of that conviction were sufficient to demonstrate future parental unfitness as they showed, inter alia, that the "defendant had a propensity to violent crime" and would "not hesitate to involve family members of a tender age in crime." (*Id.* at p. 25.)

■ It is true that the *Adoption of D. S. C.* court added, in dicta, that in making this determination, the lower court did not err in considering other past criminal activities. However, we do not read this language in *Adoption of D. S. C.* as completely unmooring the termination decision from the explicit statutory text of section 7825. (§ 7825, subd. (a)(2) [authorizing termination of parental rights based on the "[t]he facts" underlying a felony conviction]; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 4355 (1975–1976 Reg. Sess.) as amended May 28, 1976, p. 3, [noting that statutory language was amended to "focus[] on the facts of the crime," underlining in original]; cf. *Kelsey S., supra,* 1 Cal.4th at p. 827 [in construing a statute, "courts may not add provisions to a statute" where the Legislature has expressly provided the circumstances to which the statute applies].) Rather, the *Adoption of D. S. C.* court, by explicitly basing its determination on "the particular circumstances of defendant's crime," makes clear that an extensive criminal record *alone* is not sufficient for termination of parental rights, and holds only that a criminal record preceding a felony conviction can *inform* a court's determination of whether the facts underlying that particular conviction prove future parental unfitness. (*Adoption of D. S. C., supra,* 93 Cal.App.3d at p. 26 ["past criminal activities may be considered in deciding whether a natural parent has rendered himself an unfit parent for the future by commission of a felony"]; see also *Arthur C., supra,* 176 Cal.App.3d at pp. 445–446 [court properly considered "father's past criminal acts" of violence and substance abuse "when considering [whether] felony conviction" for stabbing the mother 17 times in neck, chest, abdomen, back and extremities rendered him unfit under statute], citing *Adoption of D. S. C.,* at pp. 25–26; *Geoffrey G., supra,* 98 Cal.App.3d at pp. 421, 420 [stating that "trial court may properly consider past criminal activities in determining whether a natural parent has rendered himself an unfit parent for the future by commission of a felony" where father "violently strangled [child's] mother after having consumed a substantial amount of intoxicants the night before" and father's "criminal record showed numerous past arrests and convictions for intoxication"], citing *Adoption of D. S. C.,* at pp. 26–27.)[8]

---

[8] The only arguably contrary authority cited by the S.'s is dicta from, *In re Christina P.* (1985) 175 Cal.App.3d, 115, 134 [220 Cal.Rptr. 525], which states that: "Amplification of the facts of the totality of the convictions of [the parent] could disclose a criminal propensity whose

■ Thus, given the statutory text and legislative history of section 7825, and the case law interpreting it, we must reject the S.'s contention that a court can base a termination of parental rights under section 7825 on factors other than the facts underlying a felony conviction. To the contrary, there must be a nexus between the decision to terminate parental rights under section 7825 and *the underlying facts* of a parent's felony conviction. This requirement of a nexus is not satisfied simply by the existence of a felony conviction or even the existence of multiple felony convictions absent evidence that the underlying facts of those convictions "prove the unfitness of the parent . . . to have the future custody and control of [his] child." (§ 7825, subd. (a)(2).) In so holding, we do not preclude consideration of other factors, such as an extensive criminal record, history of substance abuse, domestic violence, etc., which, in appropriate circumstances, can inform the court's evaluation of the facts underlying a felony conviction or convictions. Under section 7825, however, such factors can only *inform* that evaluation; they cannot themselves form the basis for termination.

## III

### *The Juvenile Court Abused Its Discretion in Terminating Robert's Parental Rights*

Having set forth the principles of law applicable to a termination of parental rights under section 7825, we next determine whether the juvenile court exceeded the bounds of its discretion in terminating Robert's parental

---

pattern permits an inference that he will be incarcerated for protracted periods in the future with a resultant substantial breach of parental duties." We similarly do not read this dicta to mean that an extensive criminal history *by itself* is sufficient for the termination of parental rights under section 7825, particularly in light of the fact that the holding of the case was that a criminal rap sheet, including a felony conviction for lewd conduct with a child under 14 and a felony conviction for escape, was insufficient for termination of parental rights. Rather, we believe that the quoted language must be read in concert with the *Adoption of D. S. C.* dicta, upon which it relies, to mean only that "[a]mplication of the facts" underlying multiple felony convictions (*In re Christina P.*, at p. 134) can reveal a pattern of behavior that would "prove the unfitness of the parent . . . to have the future custody and control of the child." (§ 7825, subd. (a)(2).) In any event, the statutory text and legislative history discussed *ante* make clear that exposure to lengthy incarceration is insufficient by itself to authorize termination of parental rights under section 7825. (See also *Terry E., supra*, 180 Cal.App.3d at p. 953 [actual "prison incarceration does not ipso facto show a parent's unfitness under the statute"]; *James M., supra*, 65 Cal.App.3d at p. 265 [father's life sentence not sufficient basis to terminate parental rights due to possibility of parole].) The S.'s also cite *In re Cardenas* (1961) 194 Cal.App.2d 849, 855 [15 Cal.Rptr. 238], and *In re Carmaleta B.* (1978) 21 Cal.3d 482, 493 [146 Cal.Rptr. 623, 579 P.2d 514], on this point; these cases are inapposite as they do not involve section 7825 or its predecessor statute.

rights under that section. For the reasons discussed *post*, we conclude that it did.

We reach this conclusion for two reasons. First, the juvenile court in its oral and written rulings explicitly stated that its decision terminating Robert's parental rights was based on factors other than the underlying facts of Robert's felony convictions. In the proceedings below, the S.'s attorney never referenced the underlying facts of Robert's convictions in arguing for termination, and the court never mentioned any underlying fact in its oral or written orders granting the S.'s petition. Rather, as the court explicitly stated in its written order terminating Robert's parental rights: The determination was based on "the fact that [Robert] has been convicted of three felonies, as well as having a long history of misdemeanor criminal convictions, and that he has never adequately addressed the problems which have led to his criminality and has failed to show rehabilitation."[9] Similarly the court's oral ruling issued at the conclusion of the hearing states that termination of Robert's parental rights was based on his "long criminal history, including three felonies," the "ongoing criminality," the absence of ongoing drug treatment, the "incident of domestic violence," Robert's lack of credibility, and his exposure to potential future incarceration that would "make him unavailable for parenting." While, as we have stated, these factors may inform the court's decision under section 7825 that the facts underlying a felony conviction prove future parental unfitness, such factors cannot, as appears to be the case here, themselves form the basis for the termination decision.

■ Second, and most significantly, our review of the evidence properly before the juvenile court with respect to the underlying facts of Robert's convictions demonstrates that these underlying facts cannot support a termination of parental rights under section 7825. (*Terry E.*, *supra*, 180 Cal.App.3d at p. 949 [trial court's decision must be supported by *"substantial* evidence"—i.e., evidence that is "reasonable, credible and of solid value— such that a reasonable trier of fact could find that termination of parental rights is appropriate based on clear and convincing evidence"].) Robert's felony convictions do not contain the direct indicators of parental unfitness as did the felony involved in the least grave case cited by the parties,

---

[9] While the court's written ruling quotes the statutory language in its second numbered finding that Robert "has been convicted of a felony, the facts of which are of such a nature so as to prove the unfitness of the parent to have the future custody and control of the child," the court explicitly states in the subsequent finding that "[i]n making this determination, the court considered" the factors quoted *ante*, which do not include any underlying fact of Robert's convictions.

*Adoption of D. S. C., supra,* 93 Cal.App.3d 14,[10] and have nowhere near the gravity of the felonies involved in other parental termination cases going back over the past 30 years, including cases like *Terry E.* in which the Court of Appeal *reversed* the lower court's parental rights termination order.[11] In fact, unlike all of the cases previously upholding the termination of parental rights based on a felony conviction, the facts of the felonies of which Robert was convicted—on the evidentiary record before us—show no indications of violence, lewd behavior, use of the family home, harm to family members, involvement or victimization of minors, or other direct indicators of parental unfitness. Consequently, the underlying facts of Robert's felony convictions simply cannot support the requisite finding that "[t]he facts of the [felony] of which the parent or parents were convicted are of such a nature so as to prove the unfitness of the parent or parents to have the future custody and control of the child." (§ 7825, subd. (a)(2).)

That the juvenile court acted outside the authority granted to it in section 7825 is further demonstrated by the structure of the statute itself. As discussed *ante,* the statute does not contemplate that every felony conviction will jeopardize the parental rights of an offender. (Cf. *Mark V., supra,* 177 Cal.App.3d at p. 759 [purpose of statute authorizing termination of parental rights is not "to punish the criminal offender"].) Rather, the statute applies only to felony offenses the facts of which "prove the unfitness of the parent" to "have the future custody and control of the child." (§ 7825, subd. (a)(2).) If the underlying facts of the felony offenses for which Robert was convicted properly formed the basis for termination of parental rights, virtually all felony convictions would supply such a basis—violating the express legislative intent

---

[10] Both the felony conviction and the parent's criminal record in *Adoption of D. S. C.* were significantly more egregious than are at issue here. The *Adoption of D. S. C.* court noted that prior to the commission of the dispositive felony offense, the father had just been released from prison after serving 11 years for armed robbery "during which time he was involved in an escape from jail and in an attempted escape from prison," and had been incarcerated for all but approximately one year and three months between the ages of 19 and 32. (*Adoption of D. S. C., supra,* 93 Cal.App.3d at pp. 19–20.) In addition, after the most recent conviction, the father had again escaped from custody, resulting in another conviction, and twice attempted to commit suicide in jail. (*Ibid.*)

[11] We recognize that Robert's two misdemeanor domestic violence convictions, one in 1995 and the other in 2004, are potent indicators of parental unfitness. Nevertheless, the court's authority in the proceeding now under review was limited to that granted to it by section 7825, which explicitly recognizes only one basis for termination of parental rights—the nature of the facts underlying a *felony* conviction. On the record before us, there is no nexus between Robert's misdemeanor domestic violence convictions and "[t]he facts of the [felonies] of which [Robert was] convicted" (§ 7825, subd. (a)(2)); consequently the misdemeanor convictions do not support the termination of Robert's parental rights under section 7825—although the juvenile court may, of course, rely on those convictions in making other determinations such as those with respect to guardianship or custody.

to limit the scope of section 7825 (*Kelsey S., supra*, 1 Cal.4th at pp. 826–827 [the primary role of the court " 'in construing a statute is to determine the Legislature's intent' "; "[i]f the Legislature has provided an express definition, we must take it as we find it" and may not "violate the cardinal rule that courts may not add provisions to a statute"]) as well as reopening the statute to constitutional challenge (see *In re Melkonian* (1957) 152 Cal.App.2d 250, 252 [313 P.2d 52] [upholding predecessor statute to section 7825 in face of constitutional challenge on the grounds, in part, that statute does not permit parental rights termination based on simple fact of felony conviction, but only where "the felony involved 'is of such nature as to prove the unfitness of such parent . . . to have the future custody and control of the child' "]; *In re Michele C.* (1976) 64 Cal.App.3d 818, 822 [135 Cal.Rptr. 17] [similarly upholding statute against constitutional challenge].)

## IV

### The Reversal of the Termination of Robert's Parental Rights Does Not Resolve the Issues of Custody or Guardianship

■ Our determination that the juvenile court abused its discretion in terminating Robert's parental rights is only a partial resolution of the issues in this case. The juvenile court still has pending before it the S.'s petitions for guardianship and other related petitions which must be addressed (along with the question of custody) based on wholly different legal principles than those involved in a parental rights termination proceeding under section 7825. (See, e.g., §§ 3041, subd. (a), 3040, subd. (a)(2) [if the court "make[s] a finding that granting custody to a parent would be detrimental to the child and that granting custody to the nonparent is required to serve the best interest of the child," it may, over the objection of a natural parent, grant custody "to the person or persons in whose home the child has been living in a wholesome and stable environment"];[12] *Zachary H., supra*, 73 Cal.App.4th at pp. 68–69 [affirming grant of guardianship and resulting custody to prospective adoptive parents despite objection of biological father, after petition to terminate biological father's parental rights denied, despite no finding that biological father unfit].) Therefore, we remand the case to the juvenile court for resolution of the issues still outstanding with respect to Baby Girl M.'s welfare, and emphasize that our opinion regarding Robert's parental rights should not be read to constrain the juvenile court's determination of these matters. (See *Terry E., supra*, 180 Cal.App.3d at pp. 953–954.)

---

[12] The S.'s requested below that "if the [juvenile] court finds that the adoption cannot proceed, they ask to be appointed [Baby Girl M.'s] guardian or to be awarded custody of her under Family Code § 3041."

## DISPOSITION

The judgment is reversed, and the matter is remanded with direction to reinstate Robert W.'s parental rights. The court shall consider pending petitions for custody and guardianship of Baby Girl M.

Haller, Acting P. J., and Aaron, J., concurred.

Respondents' petition for review by the Supreme Court was denied April 17, 2006, S141637. Werdegar, J., did not participate therein.